*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1241**

In the Matter of: Nicole Weber and OBO Minor Child, petitioner,
Appellant,

vs.

Jesse Weber,
Respondent.

**Filed March 16, 2026**
**Affirmed**
**Connolly, Judge**

Sherburne County District Court
File No. 71-FA-25-166

Susan A. Yager, Dayton, Minnesota (for appellant)

Mehdi Abedi, Rose Hanson, Brenda Sletten-Abedi, Abedi Hanson Sletten PLLC, St. Cloud, Minnesota (for respondent)

Considered and decided by Smith, Tracy M., Presiding Judge; Connolly, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

Appellant-wife challenges the district court's denial of her petition for an order for protection (OFP). Because we discern no abuse of discretion, we affirm.

# FACTS

Appellant Nicole Weber (wife) and respondent Jesse Weber (husband) were married in September 2020 and had a child in March 2021. In April 2025, wife filed a petition for an OFP against husband on behalf of herself and the parties' minor child. The petition alleged the following incidents where husband threatened or physically harmed wife and her child, or made them feel afraid: (1) on April 7, 2025, husband screamed at wife and "shoved [her] into the side of his truck door"; (2) on April 3, 2025, husband shoved the child causing "tears and a small bruise"; (3) on February 22, 2025, husband attempted "to seduce [wife] very aggressively by throwing [her] backwards onto the bed" after she had "a very intense spine surgery," causing wife to sustain a dislocated rib; and (4) on July 1, 2024, husband was watching the child when the child fell and sustained serious injuries.

A two-day hearing was held on May 23 and July 18, 2025, at which multiple exhibits were received and several witnesses testified, including wife, husband, five law enforcement officers, the child's daycare provider, wife's friend, a church facility manager, a church children's pastor, wife's mother, husband's cousin, husband's grandmother, and husband's father. Following the hearing, the district court denied the petition by checking a box on a form order that stated: "The allegations of [wife] were not proved." In that same order dismissing wife's petition, the district court found that there were "eight (8) plus hours of conflicting sworn testimony" and observed that it considered two other companion cases involving the parties: (1) 71-CV-25-1263, in which husband's petition for a harassment restraining order (HRO) against wife was denied; and (2) 71-FA-25-199, in which a temporary dissolution order was issued.

2

Wife appeals.[1]

## DECISION

Wife challenges the district court's denial of her petition for an OFP. This court "review[s] the decision to grant [or deny] an OFP for an abuse of discretion. A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Thompson v. Schrimsher*, 906 N.W.2d 495, 500 (Minn. 2018) (quotation and citation omitted). On appeal from a decision on whether to grant an OFP, we "will neither reconcile conflicting evidence nor decide issues of witness credibility." *Aljubailah v. James*, 903 N.W.2d 638, 643 (Minn. App. 2017) (quotation omitted). And we review the district court's factual findings for clear error. *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004).

The Domestic Abuse Act authorizes a district court to issue an OFP to protect a victim of domestic abuse. *See generally* Minn. Stat. § 518B.01 (2024); *see also Schmidt ex rel. P.M.S. v. Coons*, 818 N.W.2d 523, 526-29 (Minn. 2012). The term "domestic abuse" is defined by statute to mean, in relevant part, "(1) physical harm, bodily injury, or assault; [or] (2) the infliction of fear of imminent physical harm, bodily injury, or assault." Minn. Stat. § 518B.01, subd. 2(a). To obtain an OFP, a petitioner must prove that the respondent has committed domestic abuse "against the petitioner or the person on whose behalf the petition is brought." *Schmidt*, 818 N.W.2d at 527.

---

[1] In her reply brief, wife "object[s] to the untimely brief of [husband]." But wife did not object to husband's motion to accept his late brief and we granted husband's motion to accept his late brief. As such, husband's brief is properly before us.

Wife argues that the district court abused its discretion in denying her petition for an OFP because she "produced testimony and evidence" establishing that husband engaged in conduct constituting domestic abuse. Specifically, wife contends that she produced evidence establishing that, on February 22, 2025, husband "dislocated [her] rib with aggressive sex after her back surgery," requiring her to seek "medical treatment." Indeed, wife offered testimony in support of her position. But wife acknowledged that the surgery occurred in November 2024, three months prior to the alleged February 22, 2025 incident. Moreover, husband testified that wife "probably waited two days" after the surgery to resume sexual intercourse because she "very much" wanted to have another child. In fact, husband claimed that sex was so routine for them that it was scheduled on "multiple" calendars. According to husband, the incident on February 22, 2025, was "[v]ery accidental." He explained that wife got out of the shower, the two began "making out" at the edge of the bed, and they "stumbled and tripped over a toy or a shoe or something." Husband testified that he "tried to less[e]n the fall as much as I could, . . . which wasn't a fall, it was more of literally just laying backwards in the bed." And wife admitted that the incident began with the two kissing and that the sex was consensual.

In its order, the district court acknowledged the "conflicting" nature of the parties' testimony and apparently believed husband's version of the events. We defer to that credibility determination. *See Aljubailah*, 903 N.W.2d at 643. In fact, in her reply brief, wife acknowledges that "[c]redibility of the witnesses is the exclusive purview of the [district] court." In light of the deference afforded the district court's credibility

determinations, wife has not shown that the district court clearly erred in finding that wife failed to prove that domestic abuse occurred during the February 22, 2025 incident.

Next, wife contends that the incident on July 1, 2024, in which the child was injured while in husband's care, establishes that husband engaged in domestic abuse. We see no error in the district court's rejection of this contention. Wife never testified that husband inflicted the child's injuries. Rather, she testified that, on July 1, she asked husband if he could watch the child while she took a shower and did the dishes. According to wife, husband "got [the child] set up on his Power Wheels" and then, when husband went inside and "grabbed a cigarette," the child fell and sustained a gash requiring "14 external stitches" and "four internal" stitches. Husband did not dispute that the child was injured when he went inside to "grab a smoke," but testified that they "have a fenced-in backyard, so it's not abnormal for us to let [the child] . . . drive around the house with his Power Wheels." The district court apparently determined that the child's injury was the result of a terrible accident, and the record supports this finding. Therefore, appellant has not shown that the district court clearly erred in finding that wife failed to prove that husband engaged in domestic abuse related to the July 1, 2024 incident.

Wife also argues that she demonstrated that husband engaged in domestic abuse when he "pushed [wife] into his truck" on April 7, 2025. But husband denied that he pushed wife into the truck door. Instead, husband explained that wife was "yelling and arguing" with him, was suicidal, and started "rifling" through his truck and "threw [his] computer on the ground" and "jumped on it" in a fit of rage. He also testified that he called

5

911, and a police report related to the incident was admitted into evidence in which the responding officer concluded that there was a "verbal argument," with "[n]o assault."

Moreover, although wife made extensive claims that husband had been drinking and was intoxicated at the time of the incident, the responding officers testified that husband did not appear drunk or high and had no concerns with allowing husband to drive away. Again, the district court determined that wife failed to prove that husband committed domestic assault on April 7, and that finding is supported by the record. And to the extent that the issue depends upon conflicting testimony, the district court did not find wife's characterization of the events of April 7 to be credible, and we defer to that credibility determination. *See Aljubailah*, 903 N.W.2d at 643. As such, wife has not shown that the district court clearly erred in finding that wife failed to prove that husband committed domestic abuse on April 7, 2025.

Wife further claims that she proved that husband assaulted the child on April 3, 2025. Indeed, wife testified that, on April 3, husband was abusing Adderall when he "shoved [the child] to the ground that caused a bruise on his arm." But according to husband, he was taking Adderall as prescribed by his doctor at the time of the alleged April 3, 2025 incident. Husband also explained that, on April 3, the child "was acting uncontrollably" and was not listening. Husband testified that he "patted [the child] on the butt, and we have slippery floors. He had his socks on, and [the floor is] very slippery . . . , and he slipped on his butt and that was the extent of it." And husband testified that the child did not have any bruises as a result of the incident. The district court believed husband's testimony and did not believe wife's characterization of the incident. Because

6

we defer to this credibility determination, wife has not shown that the district court clearly erred in finding that wife failed to prove that domestic assault occurred on April 3, 2025.

Finally, wife argues that she proved that husband was drinking heavily and abusing drugs, engaged in verbal and threatening behavior, and attempted to kidnap the child from their church on May 4, 2025.[2] We are not persuaded. Husband offered evidence, including his own testimony, that refuted wife's allegations. As the district court found, there were "eight (8) plus hours of conflicting sworn testimony," and the court determined that, based on the evidence offered at the hearing, wife's allegations "were not proved." Although there is evidence supporting wife's position, wife is essentially asking us to reweigh the evidence and make credibility determinations, which is outside the function of this court. *See Aljubailah*, 903 N.W.2d at 643 (stating that, on appeal from a decision on whether to grant an OFP, this court "will neither reconcile conflicting evidence nor decide issues of witness credibility" (quotation omitted)). Moreover, we note that, even if the district court had found that domestic abuse had been proved, it still had discretion to decide not to grant an OFP. *See Thompson*, 906 N.W.2d at 500. It is wife's burden on appeal to show that the district court abused its discretion in denying her petition for an OFP. *See Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949); *see also Bloom v. Hydrotherm, Inc.*, 499 N.W.2d 842, 845

---

[2] In her main brief, and more extensively in her reply brief, wife references husband's petition for an HRO, and the parties' dissolution proceedings and parenting-time arrangement. But those issues were decided after the district court denied wife's OFP petition, are not part of the record on appeal, and are not relevant to the issue before us.

(Minn. App. 1993) (stating that on appeal, the appellant has the burden to show error and prejudice), *rev. denied* (Minn. June 28, 1993). Wife has not met this burden.[3]

**Affirmed.**

---

[3] In her reply brief, wife argues for the first time that the district court "lacks jurisdiction to order parenting time during the appeal because the safety of the child is affected by the OFP appeal." Although challenges to subject-matter jurisdiction "may be raised at any time," *Henderson v. Shinseki*, 562 U.S. 428, 434-35 (2011), "appellate review is limited to review of the facts and legal arguments that are contained in the trial record." Minn. R. Civ. App. P. 103.04 1998 advisory comm. cmt. The parties' dissolution proceedings, and corresponding parenting-time issue, relate to a separate action that are not part of the record and were not before the district court in wife's petition for an OFP. As such, wife's challenge to the district court's award of parenting time is not properly before us.